GREEN, J.
delivered the opinion of the court.
In this case the evidence of one Adams, the prosecutor, was attacked by the defendant and several witnesses testified that he was unworthy of credit. The court among other things charged the jury “that as to the testimony of the witness Adams, the law was, that when the veracity of a witness was assailed by calling his neighbors, and those acquainted with his general character, if some of the witnesses would believe him, and some others would not, his credibility was left to their discretion. If none of them supported his credibility, and there were no facts. and circumstances in evidence supporting his testimony, they should disregard his testimony altogether; but if he was sustained by other witnesses in any material facts deposed to, then they were authorized to believe him in all that he had stated, if they thought proper to do so from the whole of the evidence in the cause.”
The defendant was found guilty, and a new trial was moved 'for upon the affidavit of five of the jurors who tried the case, who state in substance, “that they understood the court to charge, that if Adams’ testimony was corroborated by that of any other witness in the cause, in any part, they were bound to believe every portion of his testimony,” and that had they not so understood the charge of the court, they would not have *336 believed Adams, except in that part of his testimony which was corroborated by another witness, nor should they have agreed to a verdict of guilty. The court refused a new trial, and the defendant appealed to this, court. The question now is, whether these affidavits are sufficient to entitle the defendant to a new trial in this cause.
The question whether the affidavits of jurors are receivable at all, or not, in order to set aside their verdict, has for a great number of years been so doubtful as to have produced various and conflicting decisions. On the one hand, the preservation of the purity of the trial by jury, demands that a verdict which has been obtained by improper means, shall not be permitted to stand — and from the nature of the case, secluded as juries are during their deliberations, information of misconduct among them can rarely be obtained, except from those of their own body, and therefore the reception of their affidavits seems to be necessary in order to disclose facts affecting their demeanor, while making up their verdict. While on the other hand, the reception of their affidavits, to invalidate their own verdict, exposes jurors to be tampered with, and by means of the various arts and influences that would be brought to bear upon them, affidavits may be obtained upon which to found applications for setting aside the verdict in almost evezy case, involving great interests. Acting upon this last view, the weight of authority in England is against the reception of such affidavits in any case, as being against public policy. Such also is the view of the subject taken by some of the most enlightened courts of several of our sister States. ^ The first time the subject came up for decision in this State was in 1821, in the case of Crawford vs. The State, (2 Yerg. Rep. 60,) when affidavits of jurors were z-eceived, and upon the facts they disclosed a new trial was awarded.
In 1833 Booby’s case (4 Yerg. Sep. 111,) was decided upon the authoi'ity of Crawford’s case, and a new li'ial was granted upon facts disclosed in the affidavits of jurors. In the case of Hudson vs. The State, (9 Yerg. Rep. 408,) the affidavits of jurors were l-eceived, but a new trial was l-efused upon the ground that the facts disclosed did not vitiate the vei'dict — so in the *337 case of Bonnet vs. Baker, (1 Hump. Rep. 395,) this court recognize the propriety of receiving affidavits of jurors upon a motion for a new trial, and in the case of Elledge vs. Todd, (1 Hump. Rep. 43,) the verdict of the jury was set aside, and a new trial granted upon facts disclosed in the affidavits of jurors.
It may therefore be considered the settled law of this court that upon a motion for a new trial, it is competent to introduce the affidavits of jurors to prove facts which will vitiate their verdict. Butin Hudson’s case (9 Yerg. Rep. 408,) this court said “it is a dangerous principle and we are not disposed to extend it one step beyond what it has already been carried.” Adhering as we do to this view of the subject, it becomes necessary to inquire, how far the principle has been carried? In Crawford’s case the jury found a vei’dict that the defendant was guilty of murder as charged, and recommended “him to the mercy of the chief magistrate of the State of Tennessee in consideration of his former good character.” One juror deposed, that he had doubts of the guilt of the defendant, and refused to render a verdict of guilty — that the jury were anxious to be discharged from the case and proposed to render a verdict of guilty, and accompany it with a recommendation of mercy to the Governor, which he was induced to believe Was effectual for the discharge of the prisoner, and that when the recommendation of mercy was added to the verdict, he agreed to return it, believing his object would be accomplished — two other jurors corroborated this statement. The court granted a new trial in the case on the ground that the fellow jurors were guilty' of misbehaviour, in the representations they made about the pardon, and that the doubting juror was induced to find the verdict, not because, from the law and evidence, he believed the prisoner guilty, but because he believed he would be pardoned.
In Booby’s case, two jurors made oath that A. Lackman, one of the jurors, staled that he had put up a stake on the result of the trial — and they also deposed that a juror had stated, after their retirement, to his fellow jurors, that the defendant had stolen a . hog in the county, and that this statement had great influence in producing the verdict of guilty against the defend *338 ant. The court granted a new trial, because facts were communicated to the jury not sworn to by the witness, and without giving the accused an opportunity of meeting such witness face to face.
In the case of Elledge vs. Todd, a jury made oath, “that the jury were divided and could not agree, and that they agreed that each member of the jury should set downa sum, that they should then add the several sums together, and divide the aggregate amount by the number of the jury, and the sum so ascertained should be their verdict.’ ’ A new trial was granted on the ground, that the mode of ascertaining the verdict, was not by the deliberation and judgment of the jury — but by a gambling process by which aresultnotin conformity with the opinion of any juror was produced. These are all the cases where new trials have been granted upon the affidavits of jurors by this court. In each of them, the judgment proceeded upon facts disclosed of the improper conduct of jury, leading to a determination of the cause upon other grounds than the judgment of the jury upon the law and the evidence.
No case has occured where a new trial has been granted on the ground, that a juror has rendered his verdict upon a mistaken opinion of the law or the facts. If a juror’s affidavit stating his opinion of the law, as the judge had expounded it, or the facts as he understood the witnesses, were to be held sufficient to set aside a verdict — provided it should turn out that he was mistaken in any particular — scarcely any verdict could stand — besides the probability, that in few cases of airy intricacy all the jurors would understand .perfectly all the principles of law expounded to them — it would be extremely easy for a juror who had been tampered with, to swear that he.had founded his verdict upon such grounds as would ensure a new trial, and it would be impossible to detect and punish his peijury. But if we adhere to the principles heretofore acted upon of requiring that facts shall be disclosed, showing the misconduct of the jury, no such danger can exist. If a juror swear falsely as to facts that occur among them, his fellow jurors will be able to contradict and expose his falsehood — so that unless the entire *339 jury were corrupted, no serious evil can l'esult from receiving such affidavits to this extent.
In Hudson's case (9 Yerg. Rep. 408) the new trial was refused upon facts involving the principle upon which the case now before us depends. After the jury had retired to consider of their verdict, they came into court and requested to ask Mark Bennett (a witness in the case) some explanatory questions. The court told the witness not to state any new fact, but after answering several interrogatories, he was asked if he had observed any soot on the defendant’s clothes, (the larceny having been committed by getting down a chimney) to which question he answered he had. This fact had not been stated by him on his first examination. The court immediately told the jury, “as the witness had not stated that fact, in his original examination the evidence was illegal.” After a verdict of guilty, one of the jurors made an affidavit, stating “that the cause of his bringing in a verdict against the prisoner was the evidence made known on the examination of Mark Bennett, as to the soot found on the prisoner’s clothes the morning after the offence was committed, and if it had not been for this fact, he never would have agreed to a verdict of guilty.”
The court refused to grant a new trial upon this affidavit, upon the ground that the administration of justice would be frustrated if new trials were granted upon the statement of a juror, that his verdict had been founded upon facts that were not strictly legal testimony.
The case now under consideration depends upon the same principle that governed in the decision of Hudson’s case. There the juror heard illegal testimony, which the judge told him to disregard — but upon which he erroneously based his verdict. Here a correct charge in clear and perspicious language was delivered — but these jurors, mistaking the sense of the charge, based their verdict upon an erroneous conception of its meaning.
It must be perceived that to grant a new trial upon these affidavits, would be going much farther than any former decision has gone, and would be opening a door for all the mischiefs, that enlightened jurists have apprehended from the admission of such evidence to impeach a verdict. There was no error in *340 the court below in refusing the new trial, and we affirm the judgment.